UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GREAT WESTERN AIR, LLC doing business as CIRRUS AVIATION SERVICES, LLC, | Case No. 2:16-CV-02656-JAD-EJY |
| Plaintiff/Counter-Defendant, | **ORDER** |
| v. | |
| CIRRUS DESIGN CORPORATION, | |
| Defendant and Counter-Plaintiff. | |

Before the Court is Plaintiff Cirrus Aviation Services, LLC's ("Cirrus Aviation") Motion to Strike Disclosure and Designation of Defendant/Counter-Claimant's Non-Retained Expert Witness Ben Kowalski (EFC No. 66); Cirrus Design Corporation's ("Cirrus Design") Memorandum in Opposition to Plaintiff's Motion to Strike Disclosure and Designation of Defendant/Counterclaimant's Non-Retained Expert Witness Ben Kowlaski (ECF No. 78); Plaintiff/Counter-Defendant's Reply in Support of Motion to Strike Disclosure and Designation of Defendant/Counter-Claimant's Non-Retained Expert Witness Ben Kowalski (ECF No. 83); Counter-Plaintiff Cirrus Design Corporation's Motion to Strike the Expert Testimony of Reza Karamooz and Shai Cohen (ECF No. 67); Plaintiff's Opposition to Defendant Cirrus Design Corporation's Motion to Strike the Expert Testimony of Reza Karamooz and Shai Cohen (ECF N0. 79); and, Counterclaim Plaintiff Cirrus Design Corporation's Reply Memorandum of Law in Support of its Daubert Motion and Motion to Strike the Expert Testimony of Reza Karamooz and Shai Cohen (ECF No. 84).

## I.    BACKGROUND

The case before the Court involves a trademark dispute between Cirrus Aviation and Cirrus Design.  ECF No. 1.  Cirrus Aviation seeks "a declaratory judgment that it does not infringe trademark rights of … [Cirrus Design] in and to the term CIRRUS and that … [Cirrus Aviation's] concurrent use of the CIRRUS term in connection with unrelated services does not warrant a finding

1

of unfair competition." *Id*. Cirrus Aviation describes itself as "in the business of providing private airline charter flights and other related services in the aircraft charter industry." *Id*. Cirrus Aviation says that it first used the trademark CIRRUS in May 2007. *Id*.

Cirrus Design states it is "an innovator in the personal aircraft market" and has been since the "1980s." ECF No. 27. Cirrus Design states that it "has spent a considerable amount of resources on marketing and advertising its products and services using the trademarks and service marks described" in its Answer and Counterclaim. *Id*. Cirrus Design also states: "In addition to manufacturing and selling personal aircraft and related products, Cirrus Design also provides numerous aircraft-related services, such as aircraft inspection and repair services, flight instruction and training, and aircraft insurance." In September 2013, Cirrus Design applied for a U.S. service mark registration for the mark "CIRRUS" for various services such as aircraft crew scheduling services, providing employee leasing of aircraft flight crews, and business management services in the nature of private aircraft management services. *Id*. Cirrus Design has used the name "Cirrus" for "aircraft and structural parts thereof" since 1979. ECF No. 27 at 8, and Ex. C, p. 1.

Cirrus Design filed a Motion to Dismiss, which was denied on March 27, 2018 (ECF No. 26). On June 1, 2018, the Court entered a discovery plan and scheduling order (EFC No. 32) that was subsequently extended four times with the last extension entered on August 2, 2019 (ECF No. 61). In each of the stipulations to extend discovery, dates for specific discovery related extensions were identified. ECF Nos. 34, 43, 52, and 60. The initial expert disclosure deadline was extended only once, from September 20, 2018 to December 19, 2018, through ECF No. 34 granted on September 13, 2018 (ECF No. 35). The rebuttal expert deadline was extended twice, the second time to January 25, 2019. ECF No. 45. The deadline to complete fact discovery was finally extended to July 2, 2019. ECF No. 53.

    a.   <u>Cirrus Aviation's Motion to Strike</u>.

Cirrus Aviation timely disclosed two experts on December 19, 2018. ECF No. 66 at 2:28. Cirrus Design did not disclose any experts on that date. *Id.* at 3:1. On January 25, 2019, Cirrus Design disclosed a single non-retained expert, Ben Kowalski ("Kowalski"), who is the Senior Vice President of Sales & Marketing for Cirrus Design. *Id*. at 3:4-6. Cirrus Aviation asserts that the

disclosure of Kowalski was untimely as he is offered as an expert for Cirrus Design's Counterclaims in chief, as well as a rebuttal expert to Cirrus Aviation's initial experts. *Id.* at 3:4-7. Moreover, Cirrus Aviation states that Cirrus Design's disclosure does not meet the requirements of Fed. R. Civ. P. 26(a)(2)(c) regarding non-retained experts because Cirrus Design did not include "any summary of facts upon which Kowalski's opinions would be based." *Id*. at 3:8-9. The disclosure made by Cirrus Design, referred to as Cirrus Aircraft in the below disclosure, states:

> Cirrus Aircraft discloses that Ben Kowalski, Cirrus's Senior Vice President of Sales & Marketing, will or may provide evidence under Federal Rules of Evidence 702, 703, or 705, on the subjects of whether there is actual and/or likely confusion caused by plaintiff/counter-defendant Cirrus Aviation Services, LLC's use of trademarks and rights belonging to Cirrus Aircraft, and related issues.
>
> A summary of the facts and opinions to which Mr. Kowalski is expected to testify is as follows: Based upon his experience in the aviation industry, his work for Cirrus Aircraft, and specific information relating to the respective activities of Plaintiff/Counter-Defendant Cirrus Aviation and Defendant/Counter-Claimant Cirrus Aircraft, Mr. Kowalski is expected to testify that in his opinion and based on factual evidence Cirrus Aviation's use of the Cirrus name and trademarks have caused actual confusion and is likely to cause additional confusion, and that that confusion is harmful to Cirrus Aircraft. Customers in the Las Vegas market have confused the two companies as a result of the similarity in names.
>
> In addition, with respect to the expert witness reports disclosed by Plaintiff/Counter-Defendant Cirrus Aviation, Mr. Kowalski is expected to testify that Mr. Karamooz's opinion that Cirrus Aircraft's aircraft are "generally not suitable for use as charter aircraft" is incorrect and inconsistent with Cirrus Aircraft's future business plans. Mr. Kowalski is further expected to testify that Mr. Cohen's opinions regarding customers and that the "target market for charter services providers[s] like Cirrus Aviation is wholly different than the target market for a purchaser of a small Cirrus [] aircraft," are also incorrect.

ECF No. 78 at 4. Cirrus Aviation asks that Kowalski be struck as both an initial and rebuttal expert.

In contrast to Cirrus Aviation's contentions, Cirrus Design contends that Kowalski "was disclosed as a fact witness at the outset of the case," was timely disclosed as an expert, the summary offered fairly describes Kowalski's "opinions and the basis for them," and the summary was provided almost six months before the close of fact discovery. ECF No. 78 at 2:6-23.

b. Cirrus Design's Motion to Strike Reza Karamooz and Shai Cohen.

On August 16, 2019, Cirrus Design filed its Motion to Strike experts Reza Karamooz ("Karamooz") and Shai Cohen ("Cohen") who were retained and timely disclosed by Cirrus

Aviation. Cirrus Design claims that these individuals offer "expert" testimony in the subject matter of customer or consumer confusion, but that neither has the qualifications necessary to offer this testimony and, moreover, that these opinions are unreliable. ECF No. 67 at 5, 7, 8, and 10.

Cirrus Aviation argues that "Mr. Cohen is presented as an expert from the perspective of a customer/user of Defendant's aircraft because he in fact is such a customer/user." ECF No. 79 at 3. His expertise is said to arise from six years as a licensed pilot and "his experience as a private pilot with extensive time with Defendant's own product." *Id*. at 3. Cohen states in his report that he has "flown approximately 160 hours in the SR22 [Cirrus Design] aircraft." ECF No. 67-3 (Cohen Report) at 1. Cohen also states that he has flown "approximately 387 hours" in other aircraft, and that based on his time as a "private pilot and a businessman," he has "become quite knowledgeable about both aircraft and air travel." *Id*.

"Karamooz is presented as an expert from the perspective of the aircraft charter industry." ECF No. 79 at 5. Karamooz's expertise is said to arise from the fact that he is an engineer, the CEO of LuckyJets since 2008, Chairman of the Nevada Department of Transportation's Aviation Technical Advisory Committee, and the founder and president of the Nevada Business Aviation Association. ECF No. 67-3 (Karamooz Report) at 1-2. Karamooz offers opinions regarding "the nature of the parties' offerings under their respective trademarks." *Id*. at 4 and 4-6.

## II.   DISCUSSION

### a.   Fed. R. Civ. P. Rule 702 and Expert Testimony Requirements.

Admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Barabin v. AsentJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the Ninth Circuit explained that "[w]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable." (Internal citations and quote marks omitted.) Relevancy, as stated by the court,

requires "the evidence … logically advance a material aspect of the party's case." *Id*. (Citation omitted.) Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id. citing Kumbo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "[E]videntiary reliability is based upon scientific validity." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993).

The Federal Rules of Evidence impose on trial courts a "gatekeeping" obligation to ensure the relevance and reliability requirements are met. *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir. 2000). The objective of the "gatekeeping" requirement is to make certain that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.,* 526 U.S. at 152. The trial judge must make "some kind of" reliability determination to fulfill the "gatekeeping" function. *Mukhtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1066 (9th Cir. 2002), *amended by* 319 F.3d 1073, 1076 (9th Cir. 2003).

Trial courts have broad discretion in performing its gatekeeping function. *Barabin*, 740 F.3d at 465 (citation omitted). The district court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 591–93).

The role of the Court is not to determine the "correctness of the expert's conclusions but the soundness of his methodology." *Id. citing Primiano v. Cook*, 598, F.3d 558, 564 (9th Cir. 2010). Nonetheless, "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Notes (2000). Where an expert satisfies the Rule 702 standards, cross-examination is the proper method of challenging the expert's opinions. *See e.g. U.S. Fidelity and Guar. Co. v. Soco West, Inc.,* No. CV 04-29, 2006 WL 5230019, at *2 (D.Mont. April 21, 2006).

The Ninth Circuit has found opinions based on an expert's experience to be properly admitted. "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval–Mendoza,* 472 F.3d 645, 655 (9th Cir.2006) (quoting *Kumho Tire Co.,* 526 U.S. at 150 (internal

quotations omitted)); *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,* 2011 WL 5417090, at *8 (N.D.Cal. Oct. 27, 2011)  (expert testimony grounded on the expert's personal knowledge and experience was admissible in light of his extensive background in the area); *Toomey v. Nextel Commc'ns, Inc.,* 2004 WL 5512967, at *8 (N.D.Cal. Sept. 23, 2004).

In *Hangarter v. Provident Life & Accident Insurance Co.*, the court explained that when discussing non-scientific testimony "the '*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology behind it.'" 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *Hankey*, 203 F.3d at 1169).  "[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.  The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013).  Nonetheless, subject beliefs and opinions are not proper expert testimony.[1]

In addition to evaluating relevance and reliability, a trial court must determine whether an expert has "appropriate qualifications." *Hankey*, 203 F.3d at 1168.  A witness may testify to his special knowledge so long as he is qualified as an expert based on any combination of knowledge, skill, experience, training, or education. *Wright v. United States,* 280 F.Supp.2d 472, 478 (M.D.N.C. 2003).  "Rule 702 contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015 (citation omitted); *Kopf v. Skyrm,* 993 F.2d 374, 377 (4th Cir. 1993) ("[w]here the expert's qualifications are challenged, the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered").

---

[1]	When considering reliability, a flexible concept, the U.S. Supreme Court suggests several factors for the Court to consider, including: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community."  *Hankey*, 203 F.3d at 1167 (citing *Daubert,* 509 U.S. at 592–94).  But, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Barabin*, 740 F.3d at 463 *citing Kumho Tire*, 526 U.S. at 153.  As explained in *Barabin*, "Rule 702 clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify." *Id.* at 464 *citing Daubert*, 509 U.S. at 589.

b.     <u>Timeliness and Non-Retained Experts</u>.

As discussed above, the discovery plan and scheduling order in this case was amended a number of times with initial expert disclosures due on December 19, 2018, and rebuttal expert disclosures due January 25, 2019. Cirrus Aviation claims that Cirrus Design's disclosure of Kowalski, on January 25, 2019, was really an untimely initial expert disclosure because Kowalski will offer testimony about Cirrus Design's counterclaims in chief as well as rebut the testimony of Cirrus Aviation's experts.

"Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure includes the experts' written reports." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing Fed. R. Civ. P. 26(a)(2)). More specifically, Federal Rule of Civil Procedure 26 was amended in 2010 to add Rule 26(a)(2)(C) pertaining to disclosures required of non-retained experts—those not required to provide a written report. However, even if an expert witness is not required to produce a report, the expert must still provide a disclosure that must include "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). This Rule was "added to mandate summary disclosures of the opinions to be offered by the expert . . . and . . . the facts supporting those opinions." *Flonnes v. Property & Cas. Ins. Co. of Hartford*, No.2:12-cv-01065, 2013 WL 2285224, at *2 (D. Nev. May 22, 2013) (citation and internal quote marks omitted). As explained in *Flonnes*, "a summary is ordinarily understood to be an abstract, abridgement, or compendium." 2013 WL 2285224, at *3 (citation omitted).

Importantly, "[p]arties must make these expert disclosures at the times and in the sequence that the court orders." *Goodman*, 644 F.3d at 827. "Rule 26(e) does not create a loophole for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed." *Flonnes*, 2013 WL 2285224, at *3 (internal quote marks and citation omitted). Federal Rule of Civil Procedure "37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Discussing Rule 37 in more

detail, the court in *Yeti* (at *id.*) cited *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) for the proposition that the new Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements . . . ." Moreover, this Rule is "a self-executing, automatic sanction to provide a strong inducement for disclosure of materials." *Yeti*, 259 F.3d at 1106 (citations omitted).

There are two recognized exceptions to Rule 37(c)(1) harsh exclusion requirements. *Id.*; *R & O Const. Co. v. Rox Pro Intern. Group, Ltd.*, No. 2:09-cv-01749, 2011 WL 2923703, at *3 (D.Nev. July 18, 2011). If a party violates these rules is able to demonstrate their failure was substantially justified or harmless, then otherwise excludable evidence may be admitted. *R & O Const. Co.*, 2011 WL 2923703, at *3 (citations omitted). The Court recognizes several factors to be considered when deciding whether a violation of disclosure rules is substantially justified or harmless. *Flonnes*, 2013 WL 2285224, at *6. These include "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Id.* (citation omitted).

c.    <u>Cirrus Design's Motion to Strike Cirrus Aviation's Experts</u>.

i.    *Motion to Strike Reza Karamooz.*

Karamooz is an engineer, who spent eleven years as the CEO of a private jet broker company that provides private jet charter services. ECF No. 67-3 (Karamooz Report) at 1. Karamooz is also involved in numerous professional organizations in Nevada addressing the business of aviation. *Id.* at 2. Karamooz reviewed materials related to the dispute before the Court, but also relied on Wikipedia for some information on which he relied. *Id.* at 6.

Karamooz opines on page 4 of his report, at paragraph 12.a., that those who use charter services, like those offered by Cirrus Aviation, "generally consist of high net-worth individuals who are willing to consistently pay fees, in addition to other amounts, in excess of $3,000 to $6,000 per hour to fly in the comfort of a private jet aircraft." *Id.* at 4. According to Karamooz, a single cross country private jet charter flight for eight individuals costs approximately $50,000 (or more); customers of private jet charter flights are "high net worth individuals" seeking privacy that

commercial and large airline charters don't offer; and, these customers are gained through personal recommendations and referrals as well as through aircraft charter brokers network used by such customers and their representatives. *Id.* at 5.

Karamooz opines in his opinion 12.b. that operators, such as Cirrus Aviation, market through broker networks, as well as to other Part 135 operators, and compete for the same customers.[2] *Id.*, opinion 12.b. Karamooz states in his opinion at paragraph 12.c. that Cirrus Design sells three small aircrafts including the SR20, SR22, and the Vision SF50 Jet; and, based on his industry knowledge and experience, those who buy these types of aircrafts are those seeking a plane for "personal and/or recreational use." *Id.*, opinion 12.c. According to Karamooz, all Cirrus Design aircraft come equipped with "an airframe parachute" for which Cirrus Design is well known and which often motivates the purchaser. *Id.*, opinion 12.d. With respect to Part 135 charter companies, Karamooz states that there is only one SR20 aircraft used for charter flights. *Id.* at 6, opinion 12.e. There are 49 SR22 and no SF50 Jets used for charters "anywhere in the world." *Id.* Karamooz cites Wikipedia, citing the Air Charter Guide, as his source for this information. *Id.* Finally, Karamooz opines that, to his knowledge, there are no Cirrus Design aircraft of any type available for charter in the state of Nevada. *Id.*, opinion 12.f.

In addition to the opinions offered in Karamooz's written report, Karamooz testified that he does not "see any confusion in the marketplace between" Cirrus Aviation and Cirrus Design. ECF No. 67-5 at 45. Karamooz stated that this opinion was based on his "personal experience," apparent discussion with friends, and internet research. *Id.* at 45, 47-48, 50-51. Cirrus Design argues this testimony is unreliable and encompasses the ultimate issue in this case rendering the opinion inadmissible. ECF No. 67 at 11-12.

Karamooz spent eleven years as the CEO of a private jet charter broker company arranging private jet services for clients flying to and from Las Vegas as well as other destinations in the U.S. and Europe. ECF No. 67-3 (Karamooz Report) at 1. This experience has undoubtedly exposed Karamooz to many customers and issues in the private jet charter travel industry rendering

---

[2] Karamooz defines Part 135 as "a set of rules with more stringent standards for commuter and on-demand services." *Id.* at 2.

Karamooz knowledgeable about (i) those seeking charter jet services, (ii) the cost of jet charter services, (iii) those who fly on chartered jets wanting discretion and privacy not offered by commercial airlines or large charter businesses, (iv) jet aircraft charter services competing for the same customers and obtaining customers through referrals and recommendations, and, (iv) what type of aircraft are available for charter in Nevada. This sufficiently qualifies Karamooz as an expert for purposes of his opinion in paragraphs 12.a., 12.b., and 12.f. This, however, does not end the question of admissibility, which is addressed further below.

Karamooz's opinion 12.c. is not supported by Karamooz's experiential expertise and personal knowledge. Karamooz provides no evidence that he has substantial experience purchasing aircraft for himself or others, and he does not otherwise state how he reached his opinion that purchasers of Cirrus Design aircraft are generally looking for a personal or recreational-use plane. *Id.* Further, Karamooz provides no sources reviewed and no facts upon which he relied when forming this opinion. *Id.* And, Karamooz fails to explain, other than in a general and conclusory fashion, how his expertise was applied to any facts at issue in this case. *Id.* Karamooz's opinion in paragraph 12.c. is not admissible.

Likewise, Karamooz fails to provide any support for his conclusion in opinion 12.d. regarding what motivates individuals to purchase Cirrus Design aircraft. *Id.* In fact, purchasing aircraft, and the motivations for doing so, are not at issue in this case. Cirrus Aviation states that what is at issue is charter services, target customers, and marketing of charter services (among other unidentified topics). ECF No. 79 at 15. Thus, the Court finds Cirrus Aviation has failed to demonstrate how Karamooz's expert opinion in paragraph 12.d. will assist the trier of fact in this case. This opinion is not admissible.

The information in Karamooz's opinion 12.e. is based on information from Wikipedia, which is not a reliable source of data. *Kole v. Astrue*, No. CV 08-0411-LMB, 2010 WL 1338092, *6 n. 3 (D. Idaho Mar. 31, 2010); *Nuton v. Astrue*, No. SKG-08-1292, 2010 WL 1375297, *1 n. 1 (D. Md. Mar. 30, 2010) (stating that, although a "useful research tool," Wikipedia "is not a sufficiently reliable or a recognized authority on medicine or medical practice"); *Techradium, Inc. v. Blackboard Connect Inc.*, No. 2-08-CV-00214-TJW, *4 n. 5 (E.D. Tex. Apr. 29, 2009) ("Wikipedia disclaims

10

any validity of the content listed on its website, and is therefore not a reliable source of technical information"); *Capcom Co. v. MKR Group, Inc.*, No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 10, 2008) ("The Wikipedia articles Capcom submits as a synopsis of these movies and video games are similarly inappropriate for judicial notice").  Absent some semblance of reliability, Karamooz's opinion in paragraph 12.e. is not admissible.

The Court also finds Karamooz's testimonial opinion, that he does not "see any confusion in the marketplace between" Cirrus Aviation and Cirrus Design, is unreliable.  ECF No. 67-5 at 45. While Karamooz stated that this opinion was based on his "personal experience," apparent discussion with friends, and internet research (*id*. at 45, 47-48, 50-51), the basis for this opinion proves unreliable.  Unidentified internet research and anecdotal discussions with friends is insufficient to establish the reliability the Court requires for admissibility.  *See Metro Indus., Inc. v. Sammi Corp.,* 82 F.3d 839, 848 (9th Cir.1996); *Gateway Contr. Servs., LLC v. Sagamore Health Network, Inc.,* IP 01–1714–C–M/S, 2002 WL 731686, at *26 (S.D.Ind. Mar. 20, 2002) (excluding expert report which was conclusory, based on data or facts gathered from discussions with plaintiff's employees or its counsel and not based on reliable principles and methods).  Further, Karamooz's personal experience does not reach market research, consumer confusion, deceptive trade practices, or survey experiences with consumer preferences.  Karamooz simply fails to demonstrate the level of intellectual rigor that characterizes the practice of an expert in the subject matter of marketplace confusion—a key area at issue in this case.  *Kumho Tire Co., Ltd.,* 526 U.S. at 152

Returning to the remaining question before the Court—whether Karamooz's opinions in paragraphs 12.a., 12.b. and 12.f. are relevant to a material aspect of this dispute and, assuming they are, whether the opinions offered by Karamooz will be helpful to the jury—the Court concludes as follows.  Karamooz's personal, eleven years of experience running a jet charter broker company (LuckyJet), providing a substantial basis for gaining expertise about the jet charter industry, its costs, its customers, business referrals, and the aircraft charter broker network, are not the type subject to *Daubert* factors such as peer review, publication, or potential error rate, but rather "testimony whose

reliability depends . . . heavily on the knowledge and experience of the expert" rendering them reliable. *Hangarter*, 373 F.3d at 1017 (citation omitted).[3]

Karamooz's opinion in paragraph 12.a. discusses who purchases jet charter flights, their cost, and the motivation for such purchases. ECF No. 67-3 (Karamooz Report) at 4-5. This information is likely beyond the ken of the jury. Moreover, the cost of charter jet flights and the motivation for such purchases certainly could impact who comprises target customers as well as marketing to those customers. These facts are reasonably related to issues of product/service confusion and deceptive trade practices. Thus, the Court finds that Karamooz's testimony, while certainly subject to vigorous cross examination that could impact the weight of the testimony provided, is relevant and likely to be helpful to the jury when deciding material issues of fact in dispute. Further, the last section of Karamooz's opinion 12.a. discusses the source of customers (customer and broker network recommendations and referrals) and therefore is also relevant to whether and when there is a likelihood of confusion over related goods and services at issue. As such, Karamooz's opinion in paragraph 12.a. is admissible.

Like the opinion regarding target customers discussed in Karamooz's opinion in paragraph 12.a., his opinion in paragraph 12.b. pertains to promoting and marketing jet charter services, a field in which Karamooz has operated for eleven years as a CEO. Facts pertaining to promotions and marketing of jet charter aircraft services is directly related to the issues of confusion and deceptive trade practices. Hence, the information offered by Karamooz in this opinion will be helpful to the jury when considering material facts and evidence at issue in this case.

Karamooz's opinion in paragraph 12.f. reflects the expert's knowledge of any Cirrus Design aircraft available for charter in Nevada, where he is involved in numerous organizations regarding

---

[3]     Cirrus Aviation points to *AMF Inc. v. Sleekcraft Boats*, which identifies eight factors courts consider when deciding whether there is a likelihood of confusion over related goods, for purposes of evaluating the admissibility of Karamooz's opinions. 599 F.2d 341 (9th Cir. 1979). These factors include (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) the intent in selecting the mark; and, (8) the likelihood of expansion of the product lines. *Id.* at 348-49 (citation omitted) (overruled on unrelated grounds, *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)). However, as explained in *Novalogic, Inc. v. Activision Blizzard*, 41 F.Supp.3d 885, 895, and 897 (C.D.Cal. 2013), even assuming the *Sleekcraft* factors apply in this case, Cirrus Aviation, which has the burden of proof, has to demonstrate how Karamoooz's potentially admissible opinions will help a jury understand the evidence or determine a material issue of fact at issue in this case.

charter aircraft. This subject matter is a bit more tangential than those subject matters appearing in paragraphs 12.a., and 12.b. However, what aircraft is available for charter in Nevada is beyond the knowledge of the jury, is relevant to the issues of marketing practices, and has potential impact on the issue of confusion. Thus, although this opinion is subject to attack with contrary evidence, and may play only a small role in the overall issues presented, the Court finds Karamooz's opinion in paragraph 12.f. admissible.

### ii. Motion to Strike Shai Cohen

The Court summarizes Cohen's written opinions as: (1) the Cirrus Design SR22 is a plane "best suited for owner pilots to take relatively short trips with friends and family to nearby locations"; (2) purchasing a new Cirrus Design SR22 is a decision that requires a great deal of thought, planning, and money; (3) individuals who purchase planes do "a fair amount of research" before deciding what aircraft to purchase; (4) individuals who purchase a Cirrus Design aircraft do so for personal use and do not hire others to fly them; (5) individuals who charter private jets through a company like Cirrus Aviation typically have high net worth, are not pilots, and do not "own their own small aircraft"; and (6) "the target market for [a] charter service provider like Cirrus Aviation is wholly different than the target market for a purchaser of a small Cirrus Design aircraft." ECF No. 67-3 (Cohen Report) at 1-2.

Cohen further opined in deposition testimony that there is no consumer confusion based on his experience "being a pilot flying these little small aircrafts," and his conclusion that he does not "believe whatsoever that a guy who spends 20 grand to fly one way on a jet somewhere is the same guy who flies single engine, slow airplane[s]." ECF No. 67-4 (excerpts from Cohen's deposition) at 33. Cohen further explained that he "has friends who fly jets" and that he could not get them anywhere near the Cirrus Design aircraft he flies "because they look down on it." *Id.* at 34.

Cohen's qualifications, upon which he basis his ability to offer each of his stated opinions, include his six years as a licensed pilot, 160 hours flying a SR22, 387 hours flying other aircraft, his time as a businessman, and speaking to three individuals over the course of his experience as a pilot. In deposition, Cohen offered more information regarding his background, but this information does not help qualify him as an expert in this case. Specifically, Cohen is currently marketing for a

13

cannabis company, he did marketing for about 15 years for a large Las Vegas based strip club, before pursuing his pilot's license he had no interest in or knowledge of general aviation, he has been a customer of Cirrus Aviation on three charter flights, and has never paid to be on a Cirrus Aviation charter. *Id*. at 13, 15, 16, 22, 26, and 29.

Likewise, when asked in deposition to explain the basis for his opinion that there are two distinct sets of customers involved in the aircraft industry at issue ("[o]ne spoiled and rich, and the other guy loves to fly" *id*. at 34), Cohen stated the opinion was based upon him "knowing the two types of people . . . from . . . his own experience." *Id*. When asked if he looked at any professional literature of other authority when forming his opinion, Cohen stated he "didn't have to" because he talks to "real people with real answers." *Id*. When asked how many real people he spoke with, Cohen stated "a handful," ultimately admitting it was "[m]aybe three" individuals. *Id*. at 35. When asked when he gathered the information from the three individuals with whom he spoke, Cohen stated "[y]ears ago . . . over the course of years of being a pilot." *Id*. Cohen also admitted he has spoken to no one else, as he has "always" held the opinion that those who charter jets are "totally against small, one-engine planes . . .." *Id*. at 36.

The Court's evaluation of Cohen's expert opinions focuses on whether he possesses specialized or technical information that is relevant and reliable based upon the personal knowledge or experiences he has described. *Sandoval–Mendoza,* 472 F.3d at 655 (quoting *Kumho Tire Co.,* 526 U.S. at 150 (internal quotations omitted)). If what Cohen offers are his subjective beliefs and opinions, these will be struck as improper expert testimony. *PixArt Imaging, Inc.,* 2011 WL 5417090, at *8.

Based on the number of hours (160) that Cohen has flown in the SR22 Cirrus Design aircraft, he is qualified to offer his first opinion that this specific aircraft is best suited for short trips to nearby locations with a small number of individuals. ECF No. 67-3 (Cohen Report) at 1. The Court's gatekeeping function is to ensure expert evidence "logically advance a material aspect of the party's case." *Barabin,* 740 F.3d at 463. And, what is relevant to this cross trademark infringement action is whether there is confusion, mistake, and deception among the relevant consuming public. This information is beyond the common knowledge of the jury. Thus, the testimony regarding the SR22

best suited use is, at least potentially, helpful to determine the issue of confusion. While the weight of this evidence is clearly subject to challenge through cross examination by Cirrus Design, the Court is not in the position of deciding "the correctness" of Cohen's opinion. *Novalogic, Inc. v. Activision Blizzard*, 41 F.Supp.3d 885, 895 (C.D.Cal. 2013) ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (citing *Daubert*, 509 U.S. at 596).

With respect to all remaining opinions offered by Cohen (purchasing a new SR22 is a decision requiring a lot of thought, planning, and money; individuals who purchase planes do "a fair amount of research" before deciding what aircraft to purchase; those who purchase a Cirrus Design aircraft do so for personal use and do not hire others to fly them; individuals who charter private jets through a company like Cirrus Aviation typically have high net worth, are not pilots, and do not "own their own small aircraft"; and "the target market for [a] charter service provider like Cirrus Aviation is wholly different than the target market for a purchaser of a small Cirrus Design aircraft"), he lacks the qualifications to testify to these conclusions.

Cohen offers his limited personal experience and no special knowledge that would render his opinions reliable. In fact, Cohen admits these opinions are based solely on his six years as a pilot, and three individuals to whom he spoke over those years. Whether the customer lists of Cirrus Aviation and Cirrus Design overlap does not matter to Cohen. ECF No. 67-4 (Cohen Deposition) at 37. Cohen has never flown or been a passenger in a Cirrus Design SF50. *Id*. at 36. Cohen has flown on a couple of charter flights, but has done no marketing for Cirrus Aviation and reviewed no published materials regarding consumer confusion as it pertains to trademark infringement or deceptive trade practices because he "[d]idn't have to." ECF No. 67-4 (Cohen Deposition) at 34.

While an expert may be qualified based on knowledge and experience, the Court's "gatekeeping" function must ensure expert testimony is reliable such that whether the expert testimony is based upon professional studies or personal experience, the expert brings intellectual rigor to his analysis. *Novalogic,* 41 F.Supp.3d at 895; *Kumho Tire Co., Ltd.,* 526 U.S. at 152. Cohen has clearly developed strongly held personal beliefs based on his experience as a small aircraft pilot. That is without doubt. But those personal beliefs do not rise to the level of expert opinions. There

are no facts Cohen identifies to form the basis of his belief regarding the time or energy expended when deciding to purchase an aircraft, and, in any event, this is not information that is clearly beyond the ken of the average juror. Likewise, Cohen offers no basis for his belief that those who buy Cirrus Design aircraft do so for personal use. Other than speaking to three individuals who were disinterested in his single engine SR22 Cirrus Design aircraft, Cohen offers nothing to support his conclusion regarding the distinction between the two customer groups he identifies—one rich and spoiled and the other the "guy [who] loves to fly."

Finally, with respect to Cohen's final opinion—that is: "the target market for [a] charter service provider like Cirrus Aviation is wholly different than the target market for a purchaser of a small Cirrus Design aircraft"—Cohen offers no experience or personal knowledge on which he draws this conclusion other than his strongly held belief that those who charter jets and those who fly single aircraft have nothing whatsoever in common.

Therefore, the Court strikes Cohen's expert opinions and report except to the extent he provides his personal history with flying Cirrus Design SR22 aircraft and his opinion that this aircraft is best suited for short trips to nearby locations with a small number of individuals.

    d.     <u>Cirrus Aviation's Motion to Strike Cirrus Design Non-Retained Expert Ben Kowalski</u>

On page 8 of Cirrus Design's opposition to Cirrus Aviation's Motion to Strike, Cirrus Design states, in pertinent part, that "[i]f Cirrus [Design's] pending *Daubert* motion [to strike Cirrus Aviation's experts] is granted, the motion to strike Mr. Kowalski's designation as a rebuttal expert becomes moot. There will be nothing left for Mr. Kowalski to rebut." ECF No. 78 at 8. To this end, as discussed more fully below, the only expert testimony by Cirrus Aviation's expert Karamooz the Court finds qualified for admission is:

> 12.a.    Cirrus Aviation Services, LLC is a Part 135 air charter operator that provides aircraft charter services. The users of Part 135 air charter services offered by companies such as Cirrus Aviation generally consist of high net-worth individuals who are willing to consistently pay fees in excess of $3,000 to $6,000 per hour to fly in the comfort of a private jet aircraft. In addition to the hourly fees, there are daily minimums (generally a minimum of 2 hours per day are charged, regardless of hours flown), 7.5% Federal Excise Tax, landing fees, ramp fees, fuel surcharges, and other related expenses, driving the cost of a single cross-country round trip flight on an 8 passenger private jet to about $50,000 or more. Many such customers

16

require discretion, privacy and a personalized level of service that commercial airlines or larger airline charter businesses do not offer. These types of customers are often gained through personal recommendation and referrals made by similar high net-worth individuals or through an aircraft charter broker network utilized by high net worth individuals or their representatives.

12.b. Part 135 aircraft charter operators, such as Cirrus Aviation Services, LLC, promote their fleet and jet aircraft charter services, and market empty leg availabilities to other Part 135 operators, and also to a sophisticated aircraft charter broker network. Such Part 135 aircraft charter operators have to compete with other Part 135 aircraft charter operators to market to, attract and keep an exclusive list of highly sophisticated high net-worth individuals who are accustomed to flying privately.

12.f. To my knowledge there are no[t] Cirrus Design aircraft of any type available for Part 135 charter in the State of Nevada. I am unaware of any aircraft manufacturer that also offers Part 135 aircraft charter services.

ECF 67-3 (Karamooz report) at 5 and 6. The only expert testimony the Court finds properly qualified for admission by Cohen is as follows:

I have flown approximately 160 hours in the SR22 aircraft over the past approximately six years . . .. It is best suited for owner pilots to take relatively short trips with friends and family to nearby locations.

ECF No. 67-3 (Cohen Report) at 1.

As stated above, Cirrus Design offered Kowalski on January 25, 2019, "the deadline for disclosure of *rebuttal* expert opinions" and at that time, "disclosed a concise summary of Mr. Kowalski's rebuttal opinions and the basis for them." ECF No. 78 at 4. In paragraph 1 of the Cirrus Design disclosure of Kowalski, it states that he "will or may provide evidence . . . on the subjects of whether there is actual and/or likely confusion caused by . . . Cirrus Aviation Services, LLC's use of trademarks and rights belonging to Cirrus Aircraft, and related issues." *Id*. In paragraph 2 of Cirrus Design's disclosure of Mr. Kowalski, it states that he "is expected to testify that . . . Cirrus Aviation's use of the Cirrus name and trademarks have caused actual confusion and is likely to cause additional confusion, and that that confusion is harmful to Cirrus Aircraft." *Id*. The disclosure goes on to state that "[c]ustomers in the Las Vegas market have confused the two companies as a result of the similarity in names." *Id.* Kowalski's summary of testimony also states that he is "expected to testify that Karamooz's "opinion that Cirrus Aircrafts [sic] are generally not suitable for use as charter aircraft is incorrect." *Id*. (internal quote marks omitted). Finally, Kowalski opines that

Cohen is also incorrect when he opines "that target market for charter services providers[s] [sic] like Cirrus Aviation is wholly different than the target market for a purchaser of a small Cirrus [] aircraft . . . ." *Id.*

Cirrus Design is clear that to the extent Kowalski is offered as a rebuttal expert, his rebuttal opinions are "moot" if Cirrus Aviation's experts are struck. *Id.* at 8. To this end, the Court finds Kowalski's rebuttal testimony, as it pertains to Karamooz's opinion regarding Cirrus Aircraft's suitability for use as charter aircraft, and Cohen's opinion regarding the target market for charter services, are, in fact, moot because neither Karamooz nor Cohen will be permitted to testify to these subject matters and, as such, there is nothing to rebut. Thus, Kowalski's proposed rebuttal testimony as it is summarized in paragraph 3 of Cirrus Design's disclosure is struck as moot.

Further, neither Cohen nor Karamooz will offer expert opinions regarding "actual and/or likely confusion caused by . . . the use of the 'Cirrus' name . . . ." That is, Kowalski's deposition testimony on the basis for reaching his opinion on this subject matter is unreliable. ECF No. 67-5 at 45, 46-48. Cohen's testimony is also unreliable as he admits he did not need to review any professional literature or other authority as he "talked to real people with real answers." ECF no. 67-4 at 34. Given that this expert testimony will not be offered by Cirrus Aviation in its case in chief, Kowalski's rebuttal testimony on these subject matters is not appropriate and will not be allowed.

As explained in *R & O Const. Co.*, "[r]ebuttal expert reports necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their responsive reports." 2011 WL 2923703, at *2 (citations and internal quote marks omitted). "Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report." *Id.* (citations omitted). Rebuttal expert reports "are not, however, the proper place for presenting new arguments." *Id.* (citations omitted). Thus, having concluded that Cirrus Aviation's experts will not offer testimony on the subjects Cirrus Design's expert was offered to contradict or rebut, Cirrus Design's expert testimony is not proper and will be struck as moot.

With respect to whether Kowalski is also offered as an expert in Cirrus Design's counterclaims' case in chief, the disclosure made by Cirrus Design suggests he is. Specifically, Cirrus Design's disclosure states, in the first two paragraphs, that Kowalski "will," "may" or "is expected to" testify to various opinions "based on factual evidence [sic] Cirrus Aviation's use of the Cirrus name and trademarks have caused actual confusion and is likely to cause additional confusion, and that is confusion is harmful to Cirrus Aircraft [aka Cirrus Design]." ECF No. 78-5 at 1-2. These disclosures, unlike the third paragraph of Cirrus Design's disclosure (*id*. at 2) was not couched in the terms of rebuttal to any expert testimony offered by Cirrus Aviation. Thus, the Court must consider whether this portion of Cirrus Design's January 25, 2019 Rule 26(a)(2)(C) witness disclosure was untimely and, if so, whether the untimely disclosure is excusable. *R & O Const. Co.*, 2011 WL 2923703, at *3.

There is no dispute that December 19, 2018 was the deadline for initial expert disclosures. There is also no dispute that Cirrus Design made no disclosures on that date and that its expert, Ben Kowalski, was not disclosed until the deadline for rebuttal experts on January 25, 2019. Having received no advance notice that Kowalski would be used in an expert capacity or what subject matters his expert testimony might cover, Cirrus Aviation did not have an opportunity to consider whether to retain a separate rebuttal expert or issue a rebuttal expert report. Thus, Cirrus Design's untimely disclosure of Kowalski as an expert was prejudicial to Cirrus Aviation. Deposition of Kowalski during the remaining discovery period does not cure this prejudice; nor does the deposition of other witnesses offered by Cirrus Design. It is the denial of Cirrus Aviation's timely ability to offer a rebuttal expert to Kowalski that is material and prejudicial.

Cirrus Design nevertheless claims that disclosure of Kowalski was harmless because he "was disclosed as a fact witness at the outset of this case." ECF No. 78 at 1-2; *see also id*. at 3. Cirrus Design cites to the declaration of David Y. Trevor, counsel for Cirrus Design Corporation, defined as "Cirrus Aircraft" in paragraph 1 of Mr. Trevor's declaration. ECF No. 78-1 ¶ 1. In paragraph 2 of Mr. Trevor's declaration he states that "[a]ttached hereto as **Exhibit 1** is a true and correct copy of Cirrus Aircraft's Initial Disclosures served on June 15, 2018." *Id*. ¶ 2 (emphasis in original). However, what is attached as Exhibit 1 to Mr. Trevor's declaration is Plaintiff Cirrus Aviation's

initial disclosures, not Cirrus Design's (aka Cirrus Aircraft) initial disclosures. Kowalski is not identified in this disclosure. Nor is Kowalski identified elsewhere as a fact witness in the exhibits attached to Cirrus Design's Opposition to Cirrus Aviation's Motion to Strike Kowalski. ECF No. 78, *generally*.

Cirrus Design's reliance on *Amos v. Makita U.S.A.*, No. 2:09–cv–01304, 2011 WL 43092 (D. Nev. Jan. 6, 2011) is misplaced. As explained in *Amos*, allowing a party to "use the 30 day deadline for disclosure of rebuttal experts as an extension of time for disclosing the lion's share of its expert information" is improper. *Id.* at *2 (citation omitted). Further, the court in *Amos* states that "[a] party is not harmed where, even though an expert disclosure fails to satisfy Fed. R. Civ. P. 26, the party knew about the expert, knew about the content of the expert's testimony, *and* had an opportunity to depose the expert." *Id.* at *4 (citation omitted) (emphasis added). Here, unlike in *Amos*, Cirrus Aviation did not know Kowalski would be offered as an expert and did not know about the content of Kowalski's expert testimony before Kowalski was disclosed on January 25, 2019. The untimely disclosure of Kowalski was not substantially justified, and Cirrus Design does not argue it was, and was not harmless. Thus, even assuming the disclosure provided the information required by Fed. R. Civ. P. 26(a)(2)(C), Cirrus Design has not met its burden "to show that the delay was substantially justified or harmless." *Id.* at *3.

"The Court should consider whether a sanction is proper under a five-factor test analyzing: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the non-offending party; (4) the public policy favoring disposition of cases on their merits; (5) the availability of less drastic sanctions." *Id.* at *4 (citation omitted). Here, the Court finds striking Kowalski as an expert is the appropriate sanction. The discovery period is closed and has been since July 2, 2019. Reopening discovery to allow Cirrus Aviation to obtain a rebuttal expert who would then have to be deposed would substantially delay the resolution of this case. Moreover, a motion for summary judgment is currently pending and that too would be impacted by reopening discovery likely leading to further delay. There is also a strong public interest in preventing consumer confusion and protecting trademarks. *Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F.Supp.3d 1072, 1081 (D. Nev. 2019) *citing*

*Co.*, 907 F.Supp.2d 1042, 1067 (N.D. Cal. 2012) ("[p]reventing consumer confusion serves the public interest and there is a strong policy in favor of protecting rights to trademarks"). In all, the Court finds striking Kowalski, Cirrus Design's expert, is the appropriate sanction in this case.[4]

## III.    CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Cirrus Aviation's Motion to Strike Disclosure and Designation of Defendant/Counterclaimant's Non-Retained Expert Witness Ben Kowalski (EFC No. 66) is GRANTED.

IT IS FURTHER ORDERED that Counterplaintiff Cirrus Design Corporation's Motion to Strike the Expert Testimony of Reza Karamooz and Shai Cohen (ECF No. 67) is GRANTED in part and DENIED in part as follows:

- Cirrus Design's Motion to Strike is denied to the extent that,

  o Mr. Karamooz shall be allowed to testify to his opinions as stated in paragraphs 12.a., 12.b., and 12.f. of his report stating, respectively:

    Cirrus Aviation Services, LLC is a Part 135 air charter operator that provides aircraft charter services. The users of Part 135 air charter services offered by companies such as Cirrus Aviation generally consist of high net-worth individuals who are willing to consistently pay fees in excess of $3,000 to $6,000 per hour to fly in the comfort of a private jet aircraft. In addition to the hourly fees, there are daily minimums (generally a minimum of 2 hours per day are charged, regardless of hours flown), 7.5% Federal Excise Tax, landing fees, ramp fees, fuel surcharges, and other related expenses, driving the cost of a single cross-country round trip flight on an 8 passenger private jet to about $50,000 or more. Many such customers require discretion, privacy and a personalized level of service that commercial airlines or larger airline charter businesses do not offer. These types of customers are often gained through personal recommendation and referrals made by similar high net-worth individuals or through an aircraft charter broker network utilized by high net worth individuals or their representatives.

    Part 135 aircraft charter operators, such as Cirrus Aviation Services, LLC, promote their fleet and jet aircraft charter services, and market empty leg availabilities to other Part 135 operators, and also to a sophisticated aircraft charter broker network. Such Part 135 aircraft charter operators have to

---

[4]    Nothing in this Order precludes Kowalski from appearing and testifying as a fact witness who, if properly disclosed, and with the proper foundation, may provide factual information that is contrary to information provided by Karamooz or Cohen.

compete with other Part 135 aircraft charter operators to market to, attract and keep an exclusive list of highly sophisticated high net-worth individuals who are accustomed to flying privately.

To my knowledge there are no[t] Cirrus Design aircraft of any type available for Part 135 charter in the State of Nevada. I am unaware of any aircraft manufacturer that also offers Part 135 aircraft charter services.

- o Mr. Cohen shall be allowed to testify to his opinion that "I have flown approximately 160 hours in the SR22 aircraft over the past approximately six years . . .. It is best suited for owner pilots to take relatively short trips with friends and family to nearby locations" as stated in his report.

- Cirrus Design's Motion to strike all remaining expert opinions offered by Messrs. Karamooz and Cohen is GRANTED.

Dated this 4th day of December, 2019

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE